UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 04-CV-0686 (JFB) (MDG)

———————————

KEISHMA SMALLWOOD, BY AND THROUGH THE GUARDIAN OF HER PERSON, EDITHA HILLS, AND ALICE COLLINS, FOR HERSELF AND FOR THE BENEFIT OF HER MOTHER, ALICE DAILYDA,

Plaintiffs,

VERSUS

MATTHEW M. LUPOLI, ALBERT BASAL, FRED BASAL, TONY ZADEH, PLAZA HOMES, LLC, UNIVERSAL DEVELOPMENT LLC, GEORGE J. BRUCKER, PETER M. REDMOND AND PETER M. REDMOND, P.C.,

Defendants.

———————————

MEMORANDUM AND ORDER
September 14, 2007

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiffs Editha Hills ("Hills") and Alice Collins ("Collins"), the special representatives of Keishma Smallwood ("Smallwood") and Alice Dailyda ("Dailyda"), respectively, (collectively, "plaintiffs") filed the instant action alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as well as state claims against defendants Matthew Lupoli ("Lupoli"), Albert Basal, Fred Basal, Tony Zadeh ("Zadeh"), Plaza Homes, LLC ("Plaza"), and Universal Development, LLC ("Universal") (collectively, the "Universal defendants"); George J. Brucker ("Brucker"); and Peter M. Redmond ("Redmond") and Peter M. Redmond, P.C. (collectively, the "Redmond defendants").[1] The action arises out of the sale at auction of two properties that, according to plaintiffs, was the result of a scheme by defendants to take advantage of plaintiffs. All defendants filed motions for summary judgment. For the reasons that follow, defendants' motions are granted as to the civil RICO claims and the Court declines to exercise supplemental jurisdiction over the

---

[1] By Order dated May 2, 2005, this Court named Hills and Collins "special representatives" in this action on behalf of Smallwood and Dailyda, respectively, pursuant to Federal Rule of Civil Procedure 17.

remaining state law claims. Accordingly, the action is dismissed in its entirety.

I. BACKGROUND

A. Facts[2]

1. The Smallwood Property

Defendant Lupoli was appointed and commissioned by the Supreme Court of New York, Queens County, as the "Guardian for Property Management" for Smallwood pursuant to a commission issued by the Clerk of Queens County on November 7, 2000. (Pls.' Counter-56.1 Stmt. to the Redmond Defs.' 56.1 Stmt. (hereinafter "Pls.' Redmond Counter-56.1") ¶ 24; Ex. E.) Hills was appointed as the guardian of the person of Smallwood. (Pls.' Redmond Counter-56.1 Stmt ¶ 10.)

After Lupoli was appointed guardian, he sought to sell the Smallwood property by public auction, but was instead directed by the court to present a contract of sale from a third-party purchaser. (Lupoli Dep. at 7, 36, 39.) Pursuant to the terms of the commission appointing Lupoli guardian for the Smallwood property, Lupoli was authorized to retain counsel, if necessary, subject to the approval of fees by the court. (Redmond Ex. E. at 2.) Lupoli retained the Redmond defendants to represent him with respect to the special proceeding wherein Lupoli recommended that the Smallwood property be sold.[3] (Redmond Tr. at 10.) Lupoli consulted with an appraiser, Stephen E. Gutleber ("Gutleber"), to establish a value at which the Smallwood property might be offered for sale. (Lupoli Dep. at 41-42.) Gutleber appraised the Smallwood property at $154,000.00 as of February 3, 2001. (Bailey Decl. Ex. 5.) Lupoli advertised the property for approximately eight weeks. (Lupoli Dep. at 51.) In July 2001, in a proposed order to show cause, Lupoli represented to the Supreme Court:

> [T]he subject premises were advertised for over forty days and offered for sale extensively over the past four months, without producing a purchaser who was ready, willing and able to proceed to contract.

(Redmond Ex. F.) In the order to show cause that was issued by the Supreme Court of New York, Queens County, on July 7, 2001, the court appointed Brucker as the court's expert appraiser for the purpose of establishing the fair market value of the Smallwood property. (*Id*.) Brucker appraised the Smallwood property at $110,000.00. (Redmond Ex. G.) Brucker testified regarding this appraisal on September 4, 2001, and addressed the differences between his appraisal and that of Gutleber. (Redmond Ex. G, H at 10-11.) In addition, on that date, Redmond represented to the court that there was no buyer for the property. (Redmond Ex. H.) Hills did not appear at the September 4, 2001 proceeding. (Redmond Ex. H.)

On October 17, 2001, the state court issued an order directing the sale of the Smallwood property at public auction to be

---

[2] Unless otherwise noted, the following facts are undisputed or the opposing party has offered no evidence controverting such facts.

[3] Defendant Redmond is an attorney at law, duly admitted to practice in the State of New York. (Pl.'s Redmond Counter-56.1 ¶ 24; Redmond ¶ 1.) Defendant Peter M. Redmond, P.C., is a professional corporation, wholly owned by Redmond, organized and existing under the laws of the State of New York. (Pls.' Redmond Counter-56.1 ¶ 2.)

held on November 13, 2001, at 9:30 a.m. (Redmond Ex. I.) However, Lupoli indicated in a subsequent advertisement that the auction would take place at 12:00 p.m. (Baily Decl. Ex. 12.) As such, an amended order was issued on November 9, 2001, which changed the auction time to 12:00 p.m. (Redmond Ex. J; Lupoli Dep. at 99.) Lupoli testified that it was his decision to switch the time of the auction. (Lupoli Dep. at 101.) The public auction of the Smallwood property was conducted by the Supreme Court of New York, Queens County at 12:00 p.m. on November 13, 2001, pursuant to bidding rules established by the court. (Redmond Ex. K.)

Lupoli testified that he attended the advertised inspection at the Smallwood property on November 12, 2001. (Lupoli Dep. at 106-07.) However, Hills testified that she retained the keys and did not recall going to the house on November 12, 2001, to let anyone in. (Hills Dep. at 42-43.)

According to plaintiffs, Hills and her daughter arrived at the courtroom where the auction was to take place between approximately 9:30 and 9:45 a.m on November 13, 2001. (Hills Dep. at 59-60.) According to Hills, Lupoli was there with Zadeh, and Lupoli informed Hills that Zadeh had purchased the Smallwood house for $112,500.00. (*Id.*)

The transcript of the November 13, 2001 auction indicates that the auction took place between 12:00 p.m. and 12:17 p.m. (Redmond Ex. K.) There were three bidders who participated in the public auction, including defendants Zadeh and Fred Basal (*Id*.) Zadeh is a member of defendant Universal. Fred Basal is a member of defendant Plaza. The two companies were located in the same premises during the relevant time and the companies "bought properties as partners." (Zadeh Dep. at 19, 24-25.) According to Basal, there were thirty or forty people in the courtroom at the time of the Smallwood auction. (Basal Dep. (Redmond Ex. AS) at 10, 17.) The bidding started at $100,000 and proceeded in increments of $2,500.00. (Redmond Ex. K) The auction transcript indicates that the winning bid was $112,000.00 (*Id.*) However, the contract for sale indicates that the sale price of the Smallwood property was $112,500.00. (Redmond Ex. M.) According to Lupoli, the discrepancy between the transcript and the contract was due to court reporter error. (Lupoli Dep. at 131.)

The Redmond defendants prepared the Contract for Sale of the Smallwood Property. (Redmond Dep. at 51-55.) On the front page of the contract, the date November 13, 2001 is typed in. (Redmond Ex. M.)

According to Fred Basal, immediately after the auction, in the court hallway, Plaza and Universal arrived at a deal to partner on the property. (Basal Dep. (Redmond Ex. AS) at 29.) According to Lupoli, Zadeh called his office to have a check brought over for the down payment. (Lupoli Dep. at 134-35.) The check arrived at the courthouse fifteen to twenty minutes later. (Lupoli Dep. at 136.) The down payment is a certified check from Universal in the amount of $11,250.00. (Redmond Ex. N.)

There is a letter, signed by Zadeh, that states that Plaza/Universal paid Lupoli $145,000.00 for the Smallwood property. (Bailey Decl. Ex. 15.) Zadeh testified that this amount was "a mistake on the papers, a typo." (Zadeh Dep. at 113.)

On May 31, 2003, the Smallwood property was re-sold for $215,000. (Lupoli Ex. BC; Pls.' Mem. at 31.)

### 2. The Dailyda Property

By commission dated August 28, 2001, Lupoli was also appointed as the guardian of the person and property of Dailyda. (Pls.' Lupoli and Universal Counter-56.1 ¶ 1; Redmond Ex. W.) Collins, as discussed *supra*, is the daughter and the executor of the estate of Dailyda. (Pls.' Redmond Counter-56.1 ¶ 11.) Lupoli retained the Redmond defendants to represent him in his role as guardian with respect to various proceedings relating to the Dailyda estate in the New York Supreme Court, Queens County. (Redmond Dep. at 12.) Lupoli requested an auction of the property, but was directed by the court to present a contract of sale on the Dailyda property from a purchaser. (Redmond Ex. X.) Lupoli used Brucker to determine an estimate of the market value of the Dailyda property. (Redmond Ex. Y.) Lupoli wrote to Collins on February 11, 2002, stating:

> A preliminary investigation of value indicates that the market value is about $267,500.00. The fact that the lower apartment is not habitable is critical because lenders normally will not offer a mortgage unless both apartments are tenable. Obviously everything else is dated and the overall condition is fair to poor.

(Redmond Ex. Z.) On March 27, 2002, Lupoli wrote to the parties claiming that two neighbors had made offers on the Dailyda property – specifically, he stated that "The Kelly's offered $195,000. The Munnes just offered $210,000 on behalf of Angela Munne's mother." (Redmond Ex. AA.) Lupoli also wrote that "[t]here is a $230,000 offer by a contractor." (Redmond Ex. AA.) Plaintiffs submitted affidavits from neighbors, indicating that they attempted to express interest in purchasing the property but Lupoli was unresponsive. (*See e.g.*, Bailey Decl. Exs. 16, 17.)

Lupoli arranged an open house for the Dailyda property on May 7, 2002. (Lupoli Dep. 171.) According to Lupoli, he set up a bidding system, requiring all cash payment in one week with no financing. (Lupoli Dep. at 175.) Furthermore, according to Lupoli, Steven Gunther ("Gunther") was the highest bidder at $285,000.00. (Lupoli Dep. at 181-82.)

The Redmond defendants prepared the contract of sale for the Dailyda property. (Redmond Ex. AB.) On June 21, 2002, Lupoli filed a proposed order to show cause with the New York Supreme Court, Queens County, seeking approval of the Gunther contract of sale. (Redmond Ex. AB.) Collins was named as a party respondent in the Supreme Court special court proceeding seeking to have the Dailyda real property sold and was served with the Order to Show Cause, the verified petition and its supporting papers.[4] (Redmond Decl. ¶ 58.) In a signed order to show cause dated June 7, 2002, the Court appointed Brucker as the court's expert appraiser. (Redmond Ex. AB.)

A hearing was held on July 30, 2002, at which Lupoli and Brucker appeared in court.

---

[4] On June 21, 2002, the same date that the order to show cause directing the sale of the Dailyda property was issued, and approximately six weeks prior to the auction, the Universal defendants made a payment in the form of an HSBC money order to Lupoli for $16,000. (Redmond Ex. AH.)

4

(Redmond Ex. AD.) However, Gunther, the alleged purchaser, did not appear, and the court adjourned the matter to August 6, 2002, at 2:00 p.m. (Redmond Ex. AD.) Three bidders participated in the August 6, 2002 public auction – Gunther, Arman Kohan, and Alfred Basal and Mazy Samadi, who participated jointly on behalf of on behalf of Plaza and Universal, respectively. (Redmond Ex AF.) Alfred Basal and Samadi submitted the winning bid of $320,000 for the Dailyda property. (Redmond Ex. AE.) A contract of sale was entered into on August 6, 2002, between Lupoli and Universal/Plaza. (Redmond Ex. AG.) The names of the buyers and the sale price are typed into the contract. (Redmond Ex. AG.) According to Lupoli, the $32,000.000 down payment was handed to him inside the courthouse. (Lupoli Dep. at 228.) An Order dated August 16, 2002, of the New York Supreme Court, Queens County, confirmed the sale of the Dailyda property to Universal/Plaza. (Redmond Ex. AI.) By Order dated August 11, 2003, the court authorized and directed Lupoli to make a payment of $2,800.00 to Peter M. Redmond, P.C., for counsel fees and disbursements with respect to the sale of the Dailyda property. (Redmond Ex. AM.)

Brucker's submitted an expert appraisal report in which he opined that the fair market value of the Dailyda property was $330,000 as of July 8, 2002. (Redmond Ex. AY.) Brucker has been appointed as an appraiser by state courts approximately one hundred and eighteen times. (Bailey Decl. Ex. 21.) Brucker stated in his deposition that he use the HUD-foreclosed mortgage appraisal method on only one occasion other than the proceeding relating to the Dailyda property. (Brucker Dep. at 11.)

Plaintiffs also point to evidence that Universal defendants Zadeh, Albert Basal and Fred Basal previously pled guilty to auction frauds in New York Supreme Court, Queens County, in 1998 (Zadeh and Fred Basal) and 2000 (Albert Basal). (Baily Decl. Ex. 31.)

B. Procedural History

Plaintiffs filed the complaint in the instant action on February 19, 2004. On September 1, 2004, defendants moved to dismiss the complaint. Those motions were denied by the Honorable Raymond J. Dearie, District Judge, by Order dated May 3, 2005. On February 7, 2006, the matter was re-assigned to the undersigned. The Redmond defendants and Universal defendants filed motions for summary judgment on March 5, 2007. Defendant Brucker filed a motion for summary judgment on March 7, 2007. Oral argument regarding defendants' motions was held on July 9, 2007.

II. Discussion

A. Summary Judgment Standard

The standards for summary judgment are well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 492 F.3d 89, 96 (2d Cir. 2007). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The court "is

not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson*, 477 U.S. at 248 (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"); *Rivkin v. Century 21 Teran Realty LLC*, 494 F.3d 99, 103 (2d Cir. 2007). As such, "if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)) (alteration in original).

## B. RICO Claims

Counts One and Two of plaintiffs' complaint allege civil RICO violations by all defendants. Pursuant to RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Section 1962(d) makes it "unlawful for any person to conspire to violate . . . the provisions of subsection . . . (c)." 18 U.S.C. § 1962(d).

In order to allege a violation of Section 1962 (c), a plaintiff must establish "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity." *Anatian v. Coutts Bank Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)); *see also S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996) ("[A] plaintiff must allege that a defendant, 'employed by or associated with' an enterprise affecting interstate or foreign commerce, conducted or participated in the conduct of this enterprise's affairs 'through a pattern of racketeering activity.'") (quoting 18 U.S.C. § 1962(c) and *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)). "Under RICO, a pattern of racketeering activity consists of at least two acts of racketeering activity (often referred to as the 'predicate acts') within a ten year period." *Lugosch v. Congel*, 443 F. Supp. 2d 254, 264 (N.D.N.Y. 2006) (citing 18 U.S.C. § 1961(1), (5)). Racketeering activity is defined as "any act which is indictable" under specified provisions of Title 18, including mail fraud. 18 U.S.C. § 1961(1)(B). In order to establish a claim of mail fraud, a plaintiff must establish "1) a scheme or artifice to defraud 2) for the purpose of obtaining money for property (or of depriving another of the intangible right of honest services, *see* 18 U.S.C. § 1346) and 3) use of the mails in furtherance of the scheme." *United States v. Altman*, 48 F.3d 96, 101 (2d Cir. 1995) (citing *United States v. Wallach*, 935 F.2d 445, 461 (2d Cir. 1991)).

6

For violations of the RICO conspiracy statute, Section 1962(d), a plaintiff must establish that the defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 244 (2d Cir. 1999).

1. The Enterprise Requirement

A RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct" whose existence is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). "[T]he existence of an association-in-fact is oftentimes more readily proven by 'what it does, rather than by abstract analysis of its structure." *Coonan*, 938 F.2d at 1559. Accordingly, "[p]roof of racketeering activity may . . . be relied upon to establish the existence of an enterprise." *Black Radio Network, Inc. v. NYNEX Corp.*, 44 F. Supp. 2d 565, 580 (S.D.N.Y. 1999) (citing *Coonan*, 938 F.2d at 1559-60).

Plaintiffs assert that defendants are an association-in-fact whose conduct involves "denuding the assets of wards of the court and reaping profits by selling their real estate at devalued prices and then flipping them for their actual value." (Pls.' Opp. Mem. at 45-46.) Specifically, plaintiffs allege that there is a "repetition of the characters and plots" related to the sale of the subject properties – namely, that the transactions both involved the same court appointed fiduciary, Lupoli, the same appraiser, Brucker, the same initial purchasers, the Universal and Plaza defendants, and the same attorney who drafted the contracts for the purchase, the Redmond defendants. (Pls.' Opp. Mem. at 46.)

However, viewing the evidence in the light most favorable to plaintiffs, the Court finds that the fact that Lupoli, a court-appointed fiduciary, selected the same appraiser in both transactions, or that the Universal and Plaza defendants used the same attorney, Redmond, in both transactions, does not create, by itself, a genuine issue as to the existence of an association-in-fact involving defendants. Instead, the Court finds that plaintiffs unsuccessfully attempt to demonstrate an association-in-fact through a series of conclusory allegations of which they have no meaningful evidence. Specifically, other than the bare facts that the two purchases at issue were both made at public auctions and involved some of the same parties, there is absolutely no evidence that the parties functioned as a unit or organization. *See First Nationwide v. Gelt Funding Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993) (quoting *Coonan,* 938 F.2d at 1560-61 ("Courts in the Second Circuit must look to the 'hierarchy, organization, and activities' of an association-in-fact to determine whether 'its members functioned as a unit."); *see also Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 450 (S.D.N.Y. 2007) ("[M]erely stringing together a list of defendants and labeling them an enterprise is insufficient to state a RICO claim."). There is absolutely no evidence linking the defendants to one another, and, other than plaintiffs' conclusory allegations, no evidence that defendants intended to participate in a scheme together or that defendants shared a common

purpose to defraud plaintiffs.[5] In addition, although plaintiffs have submitted a report from the Queens County Grand Jury for the September 2003 - March 2004 term regarding inadequacies in the "guardianship process" in Queens County, the Court notes that the report does not address the individuals and the transactions at issue in this case, and, as such, has no bearing on the issue of whether plaintiffs have established a genuine issue of material fact as to their RICO claims against defendants. (Bailey Decl. Ex. 1.)

Plaintiffs repeatedly point to one particular piece of evidence to support their claim that defendants acted jointly to harm plaintiffs: that Hills allegedly arrived at the court for the Smallwood auction and was told by Lupoli that the auction was already complete, hours before the auction had actually occurred. While Lupoli denies this conversation took place, the Court assumes, for purposes of defendants' motion, that Hills was in fact erroneously informed that the auction had been completed. In any event, the Court finds this fact immaterial to resolution of the instant motions because there is no evidence indicating that Hills' presence at the auction would have had any effect on the bid process or the price at which the Smallwood property was sold. Specifically, plaintiffs have failed to offer any evidence indicating that Hills intended to make a bid on the property. Instead, Hills expressly asserted at her deposition that she wished to attend the auction because she "would like to go and see and hear what's going on," and that Lupoli "didn't expect me to come and see the auction." (Hills Tr. at 65-66.)

---

[5] Plaintiffs also fail to set forth any evidence regarding the existence of an enterprise, apart from the alleged pattern of racketeering. However, there is a split among district courts in this Circuit on whether such a showing is necessary – specifically, there is a split among district courts regarding the proper interpretation of the Second Circuit's decision in *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004), and its earlier decision in *United States v. Mazzei*, 700 F.2d 85, 88 (2d Cir. 1980). *Compare Stein v. N.Y. Stair Cushion Co.*, No. 04-CV-4741 (DRH), 2006 U.S. Dist. LEXIS 8410, *10-*11 (E.D.N.Y. Feb. 10, 2006) ("[T]he fatal flaw in Plaintiff's allegations is that they fail to articulate an enterprise that exists as an association independent of the alleged pattern of racketeering activity. In this regard, Plaintiff does not allege that the association-in-fact enterprise has any purpose other than the execution of [defendants'] scheme to conceal assets from Plaintiff."); *and Dale v. Banque SCS Alliance, S.A.*, No. 02-CV-3592, 2005 U.S. Dist. LEXIS 20967, at *23 (S.D.N.Y. Sept. 22, 2005) ("The plaintiffs do not allege that the association-in-fact enterprise had any purpose or activities other than the execution of [defendant's] scheme. Consequently, the association-in-fact enterprise does not have any alleged existence apart from the pattern of racketeering activity alleged in the amended complaint, and it does not satisfy the requirement noted in *First Capital*."); *with JSC Foreign Econ. Ass'n Technostroyexport v. Weiss*, No. 06-CV-6095 (JGK), 2007 U.S. Dist. LEXIS 28954, at *34 (S.D.N.Y. April 17, 2007) ("*Mazzei* has not been overruled and remains good law in this circuit . . . . [Plaintiff] has adequately pleaded both the existence of an enterprise and a pattern of racketeering activity even though the specific factual allegations supporting the existence of the enterprise also support the existence of the pattern of racketeering activity."); *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 425 F. Supp. 2d 484, 500 (S.D.N.Y. 2006) (extensively analyzing *First Asset Capital Mgmt.* and *Mazzei*, and declining to grant defendant's motion to dismiss on the grounds that plaintiffs failed to plead an enterprise separate and distinct from the pattern of racketeering). In the instant action, because plaintiffs have failed to put forth any evidence from which a reasonable jury could find an association-in-fact among defendants, formal or informal, the Court need not address whether the failure to put forth evidence of an enterprise separate and distinct from the racketeering activities is fatal to plaintiffs' RICO claims under *First Asset Capital*

---

*Management.*

## 2. The Participation Requirement

In addition, even assuming *arguendo* that plaintiffs had proffered evidence raising a genuine issue as to the presence of an enterprise, to prevail on their RICO claims plaintiffs must also establish that defendants "conduct[ed] or participate[d], directly or indirectly, in the conduct of [the alleged] enterprise's affairs . . . ." *First Cap. Asset Mgmt.*, 385 F.3d at 175-76. Here, for the reasons that follow, the Court finds that plaintiffs have failed to raise a genuine issue as to whether Brucker and the Redmond defendants have conducted or participated in the alleged enterprise's affairs.

The Supreme Court has made clear "that one is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). In *Reves*, the Supreme Court held that the defendant accounting firm's actions did not satisfy the operation or management test despite the defendant's knowledge of the misleading nature of the financial reports it was presenting. *Id.* at 174, 186. Based on the holding in *Reves*, numerous courts have found that accountants and/or lawyers are not liable under RICO where they merely rendered professional services. *See, e.g., Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521-22 (2d Cir.1994) (finding that the provision of legal services related to fraudulent real estate transaction was not management of the RICO enterprise conducting the fraudulent transaction); *University of Maryland at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) ("Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result."); *Nolte v. Pearson*, 994 F.2d 1311, 1317 (8th Cir.1993) (finding that the preparer of opinion letters and informational memoranda for a RICO enterprise did not participate in "operation or management" of the enterprise); *Morin v. Trupin*, 835 F. Supp. 126, 135 (S.D.N.Y. 1993) (recognizing that "providing legal advice and legal services does not constitute participation sufficient to ground an allegation of a violation of Section 1962(c)"); *Fidelity Fed. Savs. & Loan Ass'n v. Felicetti*, 830 F. Supp. 257, 260 (E.D. Pa.1993) (concluding that, even if appraiser's reports are "keystone" of enterprise's perpetration of fraud, appraiser can not be liable under Section 1962(c)); *cf. Cadle Co. v. Flanagan*, 01-CV-531, 2006 WL 860063, at *9 (D. Conn. Mar. 31, 2006) (holding that law firm's conduct "far exceeded the rendering of legal advice and constituted participation in fraudulent conduct in violation of RICO"); *Tribune Co. v. Purcigliotti*, 869 F. Supp. 1076, 1098 (S.D.N.Y. 1994) (concluding that the participation requirement was met where law firm helped devise and manage a fraudulent scheme), *aff'd sub nom. on other grounds*, *Tribune Co. v. Abiola*, 66 F.3d 12 (2d Cir. 1995).

Here, plaintiffs have failed to put forth any evidence from which a reasonable jury could conclude that Brucker, in his role as an attorney and professional appraiser, or the Redmond defendants, respectively, did anything more than offer their professional services to the parties at issue here. In other words, there is no evidence that the involvement of Brucker or the Redmond defendants in the transactions at issue exceeded their professional duties and, thus, no evidence they operated or managed an

alleged enterprise.[6] Accordingly, the Court finds that, because plaintiffs have "adduced no evidence to show that [Brucker and/or the Redmond defendants] in any way participated in the management or direction of a RICO enterprise," *Azrielli*, 21 F.3d at 521, the RICO claims against such defendants must be dismissed for the additional reason that plaintiffs have failed to raise a genuine issue as to the participation requirement of their RICO claims.

3. The Pattern Requirement

The Court also finds that, even assuming *arguendo* that plaintiffs had offered evidence to withstand summary judgment on the enterprise requirement, plaintiffs' evidence regarding the transactions at issue is insufficient to raise a genuine issue as to the pattern requirement of their RICO claims. Specifically, in order to prevail on a RICO claim, the plaintiff must establish that "they were injured by Defendants' conduct of an enterprise through a pattern of racketeering activity." *First Asset Cap. Mgmt.*, 385 F.3d at 178 (citing *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999)). A "'pattern of racketeering activity' consists of 'at least two [predicate] acts of racketeering activity' committed in a ten-year period . . . which 'amount to or pose a threat of continued criminal activity.'" *Id.* (quoting *Cofacredit*, 187 F.3d at 242) (additional internal quotation marks and citation omitted).

As such, in order to satisfy the pattern requirement, the plaintiff must establish "continuity of racketeering activity [by the defendants], or its threat . . . ." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241 (1989). The Supreme Court has held that the continuity requirement can be satisfied in two ways:

> "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. . . . A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. . . . Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated. . . . [T]he threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes.

*H.J. Inc.*, 492 U.S. at 242-43. For the reasons that follow, the Court finds that plaintiffs fail to raise a genuine issue as to whether defendants engaged in continuous racketeering activity and/or that the threat of such activity exists.

---

[6] Although plaintiffs point to evidence that Brucker used the HUD appraisal method on only one other occasion, the Court finds that such evidence, by itself, is insufficient to create a genuine issue of material fact as to Brucker's management or control of a RICO enterprise. *See e.g.*, *Reves*, 507 U.S. at 186 (holding that "[defendant's] failure to tell the Co-Op's board that the plant should have been given its fair market value" did not constitute participation giving rise to liability under § 1962(c)).

10

First, to establish a "closed period of repeated conduct" sufficient to satisfy the continuity requirement, "'a plaintiff must provide some basis for a court to conclude that defendants' activities were neither isolated nor sporadic,'" and that defendants engaged in such activity for a substantial period of time. *De Falco v. Bernas*, 244 F.3d 286, 321 (2d Cir. 2001) (quoting *QICC Capital Corp. v. Tech. Finance Group, Inc.*, 67 F.3d 463, 467 (2d Cir. 1995) (internal quotation marks omitted)); *accord Kades v. Organic Inc.*, No. 00-CV-3671 (LTS), 2003 U.S. Dist. LEXIS 2591, at *35 (S.D.N.Y. Feb. 24, 2003). Specifically, "[t]o satisfy closed-ended continuity, the plaintiff must prove 'a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months . . . do not satisfy this requirement." *Cofacredit*, 187 F.3d at 242 (quoting *H.J., Inc.*, 492 U.S. at 242).) In calculating the duration of the pattern of racketeering activity, actions that do not constitute predicate racketeering activity are not included; rather, the duration "is measured by the RICO predicate acts the defendants commit." *De Falco*, 244 F.3d at 321 (citing *Cofacredit*, 187 F.3d at 243; *GICC Capital Corp.*, 67 F.3d at 467.). "Since the Supreme Court decided *H.J., Inc.*, this Court has never held a period of less than two years to constitute a 'substantial period of time." *De Falco*, 244 F.3d at 321. Furthermore "[w]hile closed ended continuity is primarily concerned with the time period of the activities, the court also considers factors such as the 'number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes' as relevant when determining whether closed ended continuity exists." *SKS Constructors, Inc. v. Drinkwine*, 458 F.Supp.2d 68, 78 (E.D.N.Y. 2006) (quoting *De Falco*, 244 F.3d at 321).

Here, plaintiffs fail to specifically allege the predicate acts underlying the alleged enterprise, and, thus, the time period of the alleged racketeering activity is unclear. Yet, even assuming *arguendo* that plaintiffs have alleged that the scheme commenced in November 2000, when Lupoli was appointed guardian of the Smallwood property and that "the scheme ended in February of 2003 when the [Dailyda property] was sold to the ultimate purchaser" (Pls.' Mem. at 38), the Court finds that there is absolutely no evidence demonstrating these events constitute predicate acts. For example, with regard to the appointment of Lupoli as the guardian of the Smallwood property in November 2000, plaintiffs have failed to offer any evidence indicating that the state court which appointed Lupoli was involved in the alleged enterprise.

In addition, the Court finds that, even assuming *arguendo* that plaintiffs established the predicate acts marking the beginning and the end of the alleged twenty-six month period of racketeering activity, plaintiffs have failed to offer any evidence raising a genuine issue as to whether defendants engaged in anything beyond sporadic activities related to the sale of the subject properties over that period. Indeed, viewing the evidence in the light most favorable to plaintiffs, this case presents "none of the . . . indicia of closed-ended continuity – *i.e.* a large number and variety of predicate acts, a large number of either participants or victims, and the presence of separate schemes . . . ." *Weizmann Institute of Science v. Neschis*, 229 F. Supp. 2d 234, 257 (S.D.N.Y. 2002).

Furthermore, to the extent that plaintiffs assert that defendants also repeatedly engaged in predicate acts of mail fraud over the twenty-six month period, the Court rejects that argument as insufficient to raise a genuine issue as to the pattern requirement. "It is not the number of predicates but the relationship that they bear to each other or to some external organizing principle that renders them 'ordered' or 'arranged.'" *H.J., Inc.*, 492 U.S. at 238. Thus, even assuming *arguendo* that defendants engaged in mail or wire fraud during the period at issue, there is no evidence relating to those alleged predicate acts from which a reasonable jury could find that such acts bear a relationship to one another sufficient to support a RICO claim, as opposed to an ordinary state law fraud claim. *See, e.g., Anderson v. Found. for Advancement of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (finding that the alleged predicate acts of mail and wire fraud were "not enough to distinguish [the plaintiff's RICO claim] from an ordinary fraud claim better prosecuted under state law," where the plaintiff failed to sufficiently allege "that the predicate acts bear such relationship to each other or to any external organizing principle to support a civil RICO claim").

Second, "[t]o satisfy open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit,*, 187 F.3d at 242. For example, "the threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *H. J. Inc.*, 492 U.S. at 242-43. Here, plaintiffs assert that the alleged enterprise is currently ongoing; however, plaintiffs present absolutely no evidence to support this allegation. As described at length *supra*, the alleged enterprise related to the discrete sale of two properties. Even assuming *arguendo* that plaintiffs could demonstrate that defendants were involved in a RICO enterprise, there is no evidence of a threat of continuing criminal activity beyond the sale of the subject properties. Accordingly, the Court finds that plaintiffs have failed to satisfy RICO's open-ended continuity requirement.

Where, as here, it becomes apparent after discovery that what may be an ordinary fraud case is cloaked as a civil RICO claims, the Court must grant summary judgment on the RICO claims. *See e.g.*, *Kirk v. Heppt*, 423 F. Supp. 147, 149-50 (S.D.N.Y. 2006) ("[C]ourts . . . 'must be wary of putative civil RICO claims that are nothing more than sheep masquerading in wolves' clothing.") (quoting *W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*, No. 03-CV-8606 (RWS), 2004 WL 2187069 (S.D.N.Y. Sept. 30, 2004)). Here, based upon a careful review of the record, viewed in the light most favorable to plaintiffs, the Court finds that no reasonable jury could find that defendants were part of an enterprise engaged in a pattern of racketeering. Thus, plaintiffs' Section 1962(c) claims must fail as a matter of law.

### 4. RICO Conspiracy Claim

Because plaintiffs' substantive RICO claims cannot survive defendants' motions for summary judgment, plaintiffs' conspiracy claim must also be dismissed. *See, e.g., First Capital Asset Management*, 385 F.3d at 164 ("And because Plaintiffs' RICO conspiracy claims are entirely dependent on their substantive RICO claims, we also concur in the District Court's dismissal of the RICO

conspiracy claims."); *M'Baye v. N.J. Sports Prod.*, No. 06-CV-3439 (DC), 2007 U.S. Dist. LEXIS 9101, at *22 (S.D.N.Y. Feb. 7, 2007) ("Where a substantive RICO claim is deficient, a RICO conspiracy claim under § 1962(d) must be dismissed."). Accordingly, defendants' motions for summary judgment as to plaintiffs' RICO conspiracy claims are also granted in their entirety.

## C. State Law Claims

In addition to the RICO claims, plaintiffs assert a number of state law claims, including breach of fiduciary duty, fraud, conversion, and deceit and collusion pursuant to N.Y. Judiciary Law § 487. "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recover, Inc.*, No. 06-CV-6497 (MAT), 2007 U.S. Dist. LEXIS 41834, at *15 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 52 (2d Cir. 1986)). Therefore, in the instant case, the Court, in its discretion, "decline[s] to exercise supplemental jurisdiction over [plaintiffs'] state law claims [because] it has dismissed all claims over which it has original jurisdiction." *Kolari v. New York Presbyterian Hospital*, 455 F.3d 118, 121-22 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)) (internal quotation marks omitted) ("If the federal law claims are dismissed before trial . . . the state claims should be dismissed as well."); *Karmel v. Liz Claiborne, Inc.*, No. 99-CV-3608 (WK), 2002 U.S. Dist. LEXIS 12842, at *10-*11 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court."). Moreover, the Second Circuit has recognized that the dismissal of remaining state claims after the dismissal of federal claims is particularly appropriate where as here, the resolution of the state law claims entails resolving additional issues of fact. *New York Mercantile Exchange, Inc. v. Intercontinental Exchange, Inc.*, – F.3d – , 2007 U.S. App. LEXIS 18230, at *28 (2d Cir. Aug. 1, 2007). Accordingly, pursuant to 42 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state claims, and dismisses such claims, without prejudice.

## III. Conclusion

For the reasons stated, defendants' motions for summary judgment on plaintiffs' RICO claims are GRANTED in their entirety. The Court declines to retain jurisdiction over plaintiffs' remaining state law claims, and dismisses such claims without prejudice. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 14, 2007
Central Islip, New York

* * *

The attorney for plaintiffs is Edward G. Bailey, Esq., Bailey & Sherman, P.C., 42-21 Douglaston Parkway, Douglaston, New York 11363. The attorney for defendants Lupoli, Zadeh, Albert Basal, Fred Basal, Plaza and Universal is Patrick F. Broderick, Esq., Broderick & Broderick, 42-40 Bell Blvd., Bayside, New York 11361. The Redmond defendants appeared *pro se*. The attorney for defendant Brucker is Joseph Vincent DiBlasi, Esq., Arkin Kaplan LLP, 590 Madison Avenue, New York, New York 10022.